UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ADAM M. PARK AND TRACY PARK ) | CIVIL ACTION NO.: 2:17-cv-00657-RMG |
| ) | |
| ) | |
| Plaintiff, ) | **CROWFIELD'S MOTION AND** |
| ) | **MEMORANDUM IN SUPPORT OF** |
| vs. ) | **MOTION TO INTERVENE** |
| ) | |
| MCCABE TROTTER & BEVERLY, P.C., ) | |
| ) | |
| Defendant. | |

Crowfield Plantation Community Services Association, Inc. ("Crowfield"), by and through its undersigned counsel, and pursuant to Rule 24 of the Federal Rules of Civil Procedure, seeks leave to intervene in this case. Crowfield is not a party to this litigation, nor is it seeking to be made a party. Plaintiffs make certain representations and claims in their Motion and Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF 44) that are incomplete, inaccurate, and in some instances, simply untrue. Plaintiffs' characterization of the facts and the law applicable to them in this recent pleading is misleading, and if relied upon by the Court, would have a devastating effect on the future of Crowfield.

Therefore, in order to protect its interests and ensure that the record before the Court is accurate and complete, Crowfield respectfully requests that this Honorable Court grant its Motion to Intervene and allow Crowfield to file a Response to Plaintiffs' Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), and Defendant's Motion for Summary Judgment (ECF 45).

**(1) Concise Statement of Nature of the Case**

Plaintiffs, Adam and Tracy Park, did not pay their assessments to Crowfield for many years. They also committed multiple ongoing violations of the covenants and restrictions within Crowfield and were fined accordingly. After years of nonpayment, Crowfield turned to the Defendant, McCabe, Trotter & Beverly, P.C. ("MTB") to seek help in collecting this rather large past due account. Just before trial began on the collection case, the Parks agreed to settle with Crowfield's attorneys. They even made some payment toward the settlement of the debt. However, rather than pay what they agreed under the terms of the settlement, the Parks filed this claim pursuing recovery under the federal Fair Debt Collections Act ("FDCPA"), 15 U.S.C. 1692, against the law firm that pursued collections against them on behalf of Crowfield.  The Parks claim that because MTB included attorney's fees in the communications it sent to them in efforts to collect this debt, this amounted to misrepresentations under the FDCPA. Discovery is complete. It has not produced any evidence that MTB or Crowfield misrepresented a single thing.

**(2) Statement of Facts Pertaining to the Matter Before the Court**

Plaintiffs own a home in the Commons subdivision within the Crowfield Development in Goose Creek, South Carolina. The development contains over 3900 homes and is comprised of various subdivisions. Like many planned communities in South Carolina, properties located within Crowfield, such as the Plaintiffs', are subject to recorded declarations of covenants, conditions and restrictions ("CCRs") which organize the planned community. Among other things, the CCRs obligate property owners to pay certain annual assessments to Crowfield to help maintain and improve the community, and all the homeowners benefit directly or indirectly from Crowfield's collection of the assessments. In order to maintain a safe and well cared for environment, these same governing documents also provide for use restrictions and fines for violating them.

Plaintiffs violated the use restrictions and received approximately forty-three (43) violation letters from May 30, 2012 through August 3, 2015. Ex. 8 to ECF 45 (See also Ex. 14 to ECF 44 and Ex. B to ECF 17 and its attachments). Prior to getting fined, they were sent these notice letters advising them of the violations and informing them that if they did not correct the violations, they would be fined continually until the violation was corrected. These same letters, which Plaintiffs' counsel claimed do not exist: "There exists nothing to show proper notice was given." (p. 18 of ECF 44), explained that if they disagreed with the violation, they could appeal the decision:

> If you feel this letter has been sent to you in error please provide CPCSA with proper documentation. Also, if you have any questions or would like to discuss this letter please feel free to contact the violations department at the Crowfield office during normal business hours. Beginning at p. 1 of Ex. 8 to ECF 45 (See also Ex. 14 to ECF 44 and Ex. B to ECF 17 and its attachments).

This misrepresentation of the facts is just one example of why Crowfield filed this Motion to Intervene. It is very interesting to note that although the Plaintiffs' counsel is telling the Court no notice was given, there were some forty-three (43) letters sent over a three year period. He also states very adamantly that no letter came from the Board (even though the CCRs certainly do not require the letter be written directly by the Board) Plaintiffs' counsel's own exhibit contains a letter with the following signature block, "Sincerely, CPCSA Board of Directors" (P. 3, Ex. 14 of ECF 44).

Despite counsel's assertions, the Parks themselves admit they did in fact receive the letters, but they did not respond to them in any fashion. Ex. 7 to ECF 45, Dep. T. Park, p.48, ln 1-8. In addition to receiving monthly statements, they were also sent letters advising them of the continually mounting balance, but they still did not pay the fines nor immediately correct the violations. Ex. 7 to ECF 45, Dep. T. Park, p.76, ln 19-23, see also Id. At p. 60, ln 11-18.

Plaintiffs also have not paid their assessments since 2006 and gave no explanation, even though they admitted that they knew they were owed. Id. At pp. 22, ln 13-23, ln. 2. On September 15, 2015, the Plaintiffs were sent yet another letter from Crowfield, (this one signed by the President of the Board) including a statement of their account and explaining that if it was not paid by September 28, 2015, they would be turned over to MTB for collections purposes. Ex. 9 to ECF 45. They again did not respond and took no action.

Crowfield subsequently sent their file to MTB to pursue collections against the Parks, because they had failed and refused to pay amounts they owed Crowfield under the governing documents. MTB pursued this matter and Crowfield incurred attorney's fees as a result. Just before the matter was to go to trial, the Parks agreed to a settlement whereby they would make payments toward their debt. They even began making some payment toward their outstanding debt, but they ceased and instead have chosen to sue MTB in this case alleging the firm violated the FDCPA in the process of pursuing collections against them.

Plaintiffs chose not to make Crowfield a party to this action. However, it became involved in the case via a Motion to Compel that Plaintiffs filed on October 11, 2017 (ECF 14). The Motion sought compliance with a Subpoena that Plaintiffs never properly served on Crowfield. Plaintiffs filed the Motion after Crowfield's counsel indicated he would respond to it, but that the personnel needed to respond had been on vacation. Crowfield's response to the Motion to Compel is ECF 17. Plaintiffs never objected to this filing, and Crowfield has been served with copies of all subsequent filings electronically by the Court since. This includes the summary judgment motions and supporting/opposing briefs Plaintiffs and MTB have filed.

In addition to being involved in the case via the Motion to Compel, Crowfield was also drawn in by the Plaintiffs noticing 30(b)(6) witness depositions in this case and the companion

case. Crowfield's counsel brought to the depositions copies of the governing documents and attempted to explain which sections had been amended and which ones no longer applied, but to no avail. When the Plaintiffs filed their Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), Crowfield was compelled to respond to correct the Plaintiffs' inaccurate assertions and misrepresentations in their pleadings.

Crowfield has an interest in this matter because Plaintiffs are calling into question the validity of the governing documents, Crowfield's process and procedure related to managing the development, and even the ability of Crowfield to issue fines for use restriction violations and include attorney's fees incurred in balances delinquent owners owe. Plaintiffs' filings related to the Summary Judgment Motions include numerous inaccurate, misleading and false statements to the Court. Further, if the Court were to adopt Plaintiffs' false assertions and make rulings of law based on them, Crowfield would be severely impacted, and its ability to operate and exist would be threatened.

Crowfield, therefore, is filing this Motion and Memorandum in Support of Motion to Intervene in response to Plaintiffs' Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), because the issues the Plaintiffs have raised before the Court in ECF 44 threaten Crowfield's ability to survive.

**(3) Argument**

As detailed above, Plaintiffs involved Crowfield in this case by filing the Motion to Compel its response to a Subpoena. Crowfield filed a brief responding to that Motion, and Plaintiffs never objected. Plaintiffs have thus waived any basis for objecting now.

Crowfield has been served with copies of all subsequent filings electronically by the Court since. This includes the summary judgment motions and supporting/opposing briefs

Plaintiffs and MTB have filed. Since Plaintiffs filed their Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), Crowfield has been compelled to respond to correct the Plaintiffs' inaccurate assertions and misrepresentations in their pleadings. Therefore, Crowfield is now filing this Motion to Intervene and seeking leave specifically to file a Response to Plaintiffs' Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44) and Defendant's Motion for Summary Judgment (ECF 45).

Rule 24 of the Federal Rules of Civil Procedure sets forth the standard for intervention in the federal district courts:

> Rule 24. Intervention
> (a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24 (a) (2) provides for intervention as of right where the party seeking to intervene demonstrates that: (1) its application to intervene is timely; (2) it has an interest relating to the property or transaction which is the subject of the action; (3) it is so situated that disposing of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) its interest is not adequately represented by existing parties to the action. Teague v. Baker, 931 F.2d 259, 260-261 (4th Cir. 1991). Fed. R. Civ. P. 24 (b) also allows for permissive intervention by any party who has a claim or defense that shares with the main action a common question of law or fact:

> (b) PERMISSIVE INTERVENTION.
> (1) In General. On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.
> (2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
> (A) a statute or executive order administered by the officer or agency; or
> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.
> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Crowfield's Motion to Intervene is timely. In determining whether a motion to intervene has been timely filed, courts consider: "(1) the purposes for which intervention is sought; (2) whether the [party] seeking intervention moved promptly when [it] knew or should have known of [its] interest in the case; (3) prejudice, if any, to the existing parties if the intervention is allowed; (4) prejudice, if any, to the movant if intervention is denied; and (5) the existence of special circumstances militating for or against the particular intervention sought. Geico Gen. Ins. Co. v. Shurak, 2006 to WL 1210324, at *2 (N.D. W. Va. May 3, 2006) (citing Lane v. Bethlehem Steel Corporation, 93 F.R.D. 611, 616 (D. Md. 1982).

Here, Crowfield's Motion is timely. Plaintiffs filed their Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), on June 26th and a Response is due June 10th, and Crowfield is filing its Motion prior to that deadline. Therefore, Crowfield's Motion to Intervene is being done in a timely manner.

The interest required for intervention under Fed. R. Civ. P. 24(a)(2) should be "a significantly protectable interest" Teague, 931 F 2d at 261 (quoting Donaldson V United States, 400 U.S. 517, 531 (1971). In determining whether a proposed intervenor has such an interest, the Fourth Circuit has emphasized that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as it is compatible with efficiency and due process." Feller v. Brock, 802 F. 2d 722,729 (4th Cir. 1986) (quoting Nuesse v. Camp, 385 F. 2d 694, 700 (D.C. Cir.1967). Certainly, Crowfield has a significantly protectable interest in maintaining the well being of this community by being able to continue to enforce its covenants and maintain its amenities and common areas.

As to the third factor for intervention as a matter of right, the Fourth Circuit applies a "practical impairment" test. Feller, 802 F. 2d at 730. Further, this court has observed that "[t]his

element of test requires a court to determine practical consequences of the litigation." Geico, 2006 WL 1210324, at *2. The focus of this "practical impairment " test is whether the proposed intervenors "will be practically disadvantaged if not permitted to intervene, not whether the [proposed intervenors] will be legally bound as a matter of *res judicata.*" Shenandoah Riverkeeper v. Ox Paperboard, LLC, 2011 WL 1870233 at *3 (N.D.W. Va. May 16, 2011).

Intervention is appropriate because Crowfield's ability to protect its interests would be practically impaired or impeded if it were not permitted to file a Response and participate in this Court's decision on the issues presented by the Plaintiffs' submissions to the Court. Crowfield should be allowed to intervene here because the practical consequences of an adverse ruling would be to significantly impact the existence of the Crowfield community, and its ability to continue functioning as a community.

As this court has recognized, "[t]he most important factor in determining adequacy of representation is how the interest of the proposed intervenors compares with the interests of the present parties. Shenandoah. 2011 WL 1870233, at *3. The burden of demonstrating inadequate representation under Fed. R. Civ. P. 24 "should be treated as minimal." Teague, 931 F. 2d at 262 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972)); see also Dimond v. District of Columbia, 792 F. 2d 179, 192 (D.C. Cir. 1986) (observing that the burden of showing that existing parties to litigation will not adequately represent a prospective intervenor's interests is "not onerous" and an applicant need only show that "representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate").

Courts have recognized a number of ways in which the interests of proposed intervenors are not adequately represented. For example, the Fourth Circuit was found representation to be inadequate when existing parties assertion of its claims quote "might be less vigorous" then the

intervenor's assertion of their claims. Teague, F. 2d at 262 (observing that financial constraints on another party's ability to defend a position may weigh in favor of finding that intervenors interests are not adequately represented). Similarly, this Court found intervention to be appropriate where an intervenor had "a more significant interest" than the plaintiff in the subject matter of the suit. Shenandoah Riverkeeper, 2011 WL 1870233 at *3.

Moreover, a mere "tactical similarity" of the "present legal contentions" of a plaintiff and a proposed intervenor does not assure adequacy of representation or preclude an intervenor from the opportunity to appear. See Nuesse, 385 F. 2d at 703. In Nuesse, the D. C. Circuit explicitly credited the possibility that owing to the individual Plaintiffs' narrow interest in protecting "its own commercial integrity," the plaintiff might pursue "whatever technique possible." This includes settlement, to serve that objective, while the proposed intervenor's much broader interest in resolving the core legal issue in the case goes unrepresented. Id. This is the case at bar, as Crowfield has a much broader issue with respect to the Plaintiffs' misrepresentations to the Court concerning Crowfield's CCRs and their enforcement than MTB's defense regarding the FDCPA. Any ruling could significantly impact Crowfield's ability to function in the future. Additionally, Crowfield is in a unique position to offer the Court insight into the history and workings of the CCRs over the years.

Crowfield also qualifies for permissive intervention under Fed. R. Civ. P. 24(b), which provides in relevant part: "On timely motion, the court may permit anyone to intervene who… has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Fed. R. Civ. P. 24(b)(3) further provides that in considering a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Id. at 24(b)(3).  Here, as discussed

above, proposed intervenors motion is timely, the issues concerning the proposed intervenor share a common question of law with the main action, and proposed intervenor's intervention will not unduly delay or prejudice the original parties' rights, especially since the proposed intervenors are only requesting that the Court consider allowing Crowfield to file a Response to Plaintiffs' Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), and Defendant's Motion for Summary Judgment (ECF 45). Accordingly, permissive intervention also is warranted.

## CONCLUSION

For all the foregoing reasons, Crowfield respectfully requests this court grant leave to intervene as a matter of right or in the alternative, grant permissive intervention, to file a Response to Plaintiffs' Motion and Memorandum in Support of Partial Summary Judgment on Liability (ECF 44), and Defendant's Motion for Summary Judgment (ECF 45).

Respectfully submitted,

*s/ Paul A. James*
Paul A. James Attorney at Law, LLC
Federal Bar No. 2066
1134 Waterfront Drive
Mount Pleasant, SC 29464
South Carolina Bar No. 2952
(843) 849-0111
paul@pauljameslaw.com